IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-HC-2102-BO

| | |
|---|---|
| JOSE LUIS MACIAS, )<br>Petitioner, )<br>)<br>v. )<br>)<br>BUTCH JACKSON, )<br>Respondent. ) | ORDER |

Jose Luis Macias, a state prisoner, petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Now before the court for review is respondent's motion for summary judgment. (D.E. # 13) Petitioner has responded. (D.E. # 17, 18, and 19) The matter is ripe for determination.

On January 26, 2001, petitioner was found guilty in the Wake County Superior Court following a trial by jury of trafficking in more than 400 grams of cocaine by possession and trafficking in more than 400 grams of cocaine by transportation. He was represented by Marilyn A. Miller. Petitioner was sentenced to two consecutive terms of 175 to 210 months' imprisonment. An appeal of right was filed with the North Carolina Court of Appeals. On the same day, through counsel, petitioner filed in the superior court a "Motion for Appropriate Relief to Reconsider the Sentences Imposed in these Cases" (first MAR).

On December 17, 2002, the North Carolina Court of Appeals issued an unpublished opinion finding no error in petitioner's criminal judgments. State v. Macias, No. COA02-340, 2002 WL 31818992 (N.C. Ct. App. Dec. 17, 2002). John T. Hall represented petitioner on appeal.

On October 5, 2004, petitioner filed a pro se petition for writ of certiorari in the North Carolina Supreme Court seeking review of the North Carolina Court of Appeals' opinion. On December 2, 2004, certiorari was denied. State v. Macias, 359 N.C. (2004)

On December 12, 2008, petitioner filed a pro se MAR ("second MAR") in the Superior Court which was denied on May 1, 2009. Within the denial of the MAR, it was noted the January 31, 2001 MAR (first MAR) had not yet been adjudicated and was likewise denied.

On June 8, 2009, petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals to review the denial of the MARs. On June 23, 2009, the certioriar petition was denied.

On August 19, 2009, petitioner's 28 U.S.C. § 2254 writ of habeas corpus petition was filed with this court.

## Issues

Petitioner asserts four grounds for relief: (1) the trial court abused its discretion in denying a motion for a mistrial and motion to strike; (2) the trial court abused its discretion in denying the motion to dismiss for insufficient evidence; (3) ineffective assistance of counsel; and (4) his sentence was unauthorized at the time of imposition because it contained a term of imprisonment not authorized by the North Carolina legislature.

## Factual Statement

The North Carolina Court of Appeals summarized the facts from petitioner's trial as follows:

> At trial, Miguel Uriv Rios (Rios) testified he met defendant approximately three weeks before he and defendant were arrested. Defendant told Rios, an admitted drug dealer, that he had some cocaine and he gave Rios a sample.

2

Rios testified he was asked by an individual named Pajuan for some cocaine. Defendant indicated that he could provide a kilo of cocaine for the sale to Pajuan. Rios arranged for the sale of the cocaine to Pajuan. Defendant said he wanted $24,000.00 for the kilo of cocaine. Rios was to make $500.00 from the sale to Pajuan. Rios and his girlfriend, Maria Castro Guzman (Guzman), met defendant at a trailer off Highway 401 in Wake County on 2 August 2002. While at the trailer, defendant showed Rios the cocaine in the trunk of defendant's white Honda. Rios and Guzman drove in Rios' van from the trailer to a Sam's Club on South Saunders Street in Raleigh. Defendant followed Rios' van to the Sam's Club in defendant's white Honda. When Rios and defendant arrived at the Sam's Club, defendant parked his car a few parking spaces away from Rios' van. Rios exited his van and walked towards the Sam's Club. Defendant opened up the trunk of his car and took out a couple of white bags and placed them in Rios' van.

Pajuan changed the location of the transaction to the Innkeeper Motel. When Rios got back into his van, defendant was already sitting in the middle seat located behind Rios and Guzman. Defendant had a white bag either under his feet or under the seat, which Rios testified he believed contained cocaine. As Rios and defendant were leaving the Sam's Club parking lot to drive to the Innkeeper Motel, Raleigh police stopped them. Rios ran but was apprehended a short distance away. Pajuan was a confidential informant for the police. The police found a plastic bag containing powder cocaine in the passenger compartment of the van, where defendant had been sitting. Defendant stipulated that a laboratory analysis showed the bag contained 993.1 grams of cocaine.

Before defendant's trial, Rios pleaded guilty to trafficking in cocaine by possession and trafficking in cocaine by transportation. Rios testified that while he was in jail he received some letters in Spanish, which he understood were written by defendant, who was also in the same jail. Rios testified that while he and defendant were in the exercise yard at the jail, defendant told him that he would write a letter to Rios. Rios saw defendant hand letters to the "hall man" or "cleanup man" at the jail, who delivered them to Rios.

On direct examination, Rios read the letters in Spanish and then testified about them in English. Rios stated that through the letters, defendant offered him $3,000.00 and either the white car or the money from the sale of the white car, if he would take all the blame for the drug transaction. Rios initially informed defendant that he would accept the offer. However, Rios testified that after defendant's wife had paid money into Rios' jail account, for which Rios had the deposit receipt, Rios changed his mind and rejected defendant's offer. When the letters were introduced into evidence, English translations were attached to them. The translations had been prepared by Officer Campos, who was fluent in Spanish. Defendant did not object to admission of the letters or the attached translations.

The first day of trial ended after Rios' direct examination and a portion of his cross-examination had occurred. During the first day of the trial, an interpreter, Gonzalo Herrera (Herrera), sat behind Rios while he was testifying, in order to assist Rios if any assistance was needed. Judge Howard E. Manning, Jr. replaced Judge James Spencer, the trial judge from the first day of trial, because Judge Spencer was ill. On the second day of the trial, defendant objected to Herrera assisting Rios during Rios' testimony on the previous day. Defendant moved to strike Rios' testimony and for a mistrial. The trial court determined that any assistance Herrera gave Rios, although it was not clear that Herrera ever translated anything for Rios, was rendered by Herrera only during the last twenty-five minutes of the first day, while Rios was being cross-examined by defendant's attorney. The trial court denied defendant's motions but permitted defendant to begin his cross-examination of Rios anew, using the court-appointed interpreter, Bibi Rodriguez (Rodriguez), not Herrera, in case Rios needed assistance.

Macias, No. COA02-340, 2002 WL 31818992, at *1-*2.

## Discussion

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court's review of Macias' claims is governed by 28 U.S.C. § 2254(d) which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Id.

B. Abuse of trial court's discretion in denying motion for a mistrial and motion to strike

This claim appears to assert trial error when the State had a Spanish, non-court-appointed translator coach a witness concerning the witness's testimony about letters written in Spanish and introduced into evidence. Specifically, a witness, co-defendant Miguel Uriv Rios, was testifying. On the fist day of trial, Rios was assisted by translator Gonzalo Herrera. Herrera was appointed to assist Rios in his case and to interpret trial testimony at petitioner's trial for Rios. He was not appointed to translate for the jury at petitioner's trial. Herrera was not a fully accredited Spanish interpreter, a requirement of North Carolina law. When Rios testified, Herrera went with him. However, the translator appointed to interpret the testimony at petitioner's trial was Bibi Rodriguez.

During the first day of trial, the trial judge, Judge James Spencer, became ill. Judge Manning began presiding over the trial in its second day. On the second day of trial with Judge Manning presiding, petitioner moved to strike Rios' testimony, or alternatively for a mistrial, on the grounds Herrera was not appointed to translate for the jury in his case. Initially, Judge

5

Manning, suggested striking the first day and beginning Rios' testimony anew with Ms. Rodriguez translating. Upon inquiry from Ms. Rodriguez regarding Rios' testimony, Judge Manning determined that striking Rios' cross-examination from the first day was the best recourse. Thus, only the cross-examination would begin anew with Ms. Rodriguez as the translator. Judge Manning based his decision on Ms. Rodriguez's averments that the only time Mr. Herrera spoke to Rios during his testimony other than interpreting words like "of" or "and" was during the cross-examination. During cross, Ms. Rodriguez heard Mr. Herrara say to Rios, "Don't back down. Don't back down," and she noted an exchange in Spanish between the two which she was unable to discern. The trial court instructed the jury to disregard Rios' cross-examination testimony the previous day.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review." Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004); see also Soap v. Carter, 632 F.2d 872, 875 (10th Cir. 1980) (concluding that "rulings on the appointment and qualifications of interpreters do not reach constitutional proportions"). Habeas relief, in such an instance would necessarily be found only if due process violations occurred.

"Due process requires the state courts in conducting criminal trials to proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.' " Id. (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence

'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Id. Petitioner cannot make such a showing here given the strong, indeed overwhelming, evidence against him.

Furthermore, while the situation may have breached the parameters of state law, Judge Manning took swift and corrective measures to correct the State law flaw by striking the testimony. Nothing indicates the error rose to the level of a federal constitutional due process violation.

Petitioner raised this issue in his second MAR which was denied. The MAR court's denial, albeit summary, is an adjudication on the merits. Hartman v Lee, 283 F.3d 190, 194 (4th Cir. 2002) (while a state court may not set out reasons for a decision on the merits, the holding is entitled to deference if independent review of law reveals the result meets 2254(d) standards). The state-court adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Estelle. See § 2254(d)(1). Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. See § 2254(d)(2).

C. <u>Abuse of trial court's discretion in denying motion to dismiss for insufficient evidence</u>

The standard governing review of a claim for insufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); In Re Winship, 397 U.S. 358, 362 (1970). Petitioner raised this issue in his direct appeal and second MAR. Both the North Carolina Court of Appeals and the North Carolina Superior Court denied the claim. Macias, No. COA02-340, 2002 WL 31818992, at *3-*4.

7

In adjudicating this issue the court shall "look through" the summary MAR order to the Court of Appeals' opinion. Ylst v. Nunnemaker, 501 U.S. 797. 805 (1991) (providing that an unexplained order is presumed to be based on the same ground as an earlier or last explained opinion). The North Carolina Court of Appeals held in its written order:

> Defendant was charged with trafficking in cocaine by possession and trafficking in cocaine by transportation in violation of N.C. Gen. Stat. § 90-95(h)(3). The two essential elements of trafficking in cocaine by possession are that "[t]he [cocaine] must be possessed, and the [cocaine] must be knowingly possessed." State v. Weldon, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985) (quoting State v. Rodgers, 32 N.C. App. 274, 278, 231 S.E.2d 919, 922 (1977)). "A person [has] 'possession' of [cocaine] within the meaning of G.S. 90-95 if they have the power and intent to control it; possession need not be actual." State v. Rich, 87 N.C. App. 380, 382, 361 S.E.2d 321, 323 (1987) (citing State v. Baize, 71 N.C. App. 521, 323 S.E.2d 36 (1984), disc. review denied, 313 N.C. 174, 326 S.E.2d 33 (1985)). Further, the State need not show that the defendant owned the cocaine or was the only individual with access to it. Id. (citations omitted). "[T]he State may overcome a motion to dismiss ... by presenting evidence which places the accused 'within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession.'" State v. Harvey, 281 N.C. 1, 12-13, 187 S.E.2d 706, 714 (1972) (citations omitted).
>
> Similarly the two essential elements of trafficking in cocaine by transportation are that (1) the defendant must have transported the cocaine, and (2) the defendant must have transported the cocaine knowingly. See State v. Outlaw, 96 N.C. App. 192, 385 S.E.2d 165 (1989), disc. review denied, 326 N.C. 266, 389 S.E.2d 118 (1990). Transportation is " 'any real carrying about or movement from one place to another.'" Id. at 197, 385 S.E.2d at 168 (quoting Cunard Steamship Co. v. Mellon, 262 U.S. 100, 122, 67 L. Ed. 894, 901 (1923)). "A conviction for trafficking in cocaine by transportation requires that the State show a 'substantial movement.'" State v. Wilder, 124 N.C. App. 136, 140, 476 S.E.2d 394, 397 (1996) (quoting State v. Greenidge, 102 N.C. App. 447, 451, 402 S.E.2d 639, 641 (1991)). "Our courts have determined that even a very slight movement may be 'real' or 'substantial' enough to constitute 'transportation' depending upon the purpose of the movement and the characteristics of the areas from which and to which the contraband is moved." State v. McRae, 110 N.C. App. 643, 646, 430 S.E.2d 434, 436, disc. review denied, 334 N.C. 625, 435 S.E.2d 347 (1993) (citation omitted). "A determination of whether there has been 'substantial movement' involves consideration of 'all the circumstances surrounding the movement'" State v. Manning, 139 N.C. App. 454, 468, 534 S.E.2d 219, 228 (2002), aff'd per

curiam, 353 N.C. 449, 545 S.E.2d 211 (2001) (quoting Greenidge, 102 N.C. App. at 451, 402 S.E.2d at 641).

In State v. Outlaw, the defendant was stopped by law enforcement as he was backing out of his driveway with cocaine in his truck. 96 N.C. App. 192, 197, 385 S.E.2d 165, 168-69 (1989). Our Court held there was sufficient evidence to sustain a charge of trafficking, where the evidence tended to show the defendant would have continued on in the car if the agent had not pulled him over. Id.

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, the evidence tended to show that defendant told Rios he could provide a kilo of cocaine for Rios to sell to Pajuan; defendant had cocaine in the trunk of his car; defendant carried a plastic bag from the trunk of his car; and when defendant got into Rios' van, he put the bag either under his feet or under the seat. When the location of the drug sale changed from the Sam's Club parking lot, defendant and Rios drove in Rios' van out of that parking lot towards the new location of the proposed sale. When police stopped Rios' van, there was a plastic bag containing powder cocaine in the passenger area of the van where defendant had been sitting. Defendant stipulated that the cocaine found was approximately one kilogram. Evidence also tended to show that defendant paid money into Rios' account in order to get Rios to take the blame for the crimes. We hold that viewing the evidence in a light most favorable to the State, the trial court did not err in denying defendant's motion to dismiss.

Macias, No. COA02-340, 2002 WL 31818992, at *3-*4. The findings of the state court are presumed correct. See 28 U.S.C. § 2254(e)(1). The findings are detailed and thorough. The state-court adjudications are not contrary to, nor involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Jackson. See § 2254(d)(1). Nor are they based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. See § 2254(d)(2).

D.  Ineffective assistance of counsel

Petitioner asserts counsel was ineffective for (i) failing to "assign" a Spanish-to-English interpreter and to have a translator present during their pretrial meetings; (ii) failing to object to the introduction of letters allegedly written by Petitioner; (iii) failing to object to the introduction

9

of the letters on the grounds that the letters were not written by Petitioner; and (iv) failing to ask the trial court to apply the correct standard for the motion for mistrial and motion to strike. In Strickland v. Washington, 466 U.S. 668, 687-90 (1984), the Supreme Court held that to prove ineffective assistance of counsel a petitioner must show counsel's performance was deficient and that the deficiency prejudiced his case. The issues shall be reviewed separately with the exception of issue ii and iii which are the essentially the same and shall be reviewed together.

(i) Petitioner argues his attorney did not speak Spanish but failed to have an interpreter at the pretrial meetings. Petitioner does state he spoke "very limited English" to counsel and assumed trial counsel did not understand him. (Pet., "Supporting Facts" for this claim) He argues "Petitioner did not know or understand what his attorney was saying or planning to do in his defense because he did'nt [sic] think or believe she understood the events explain in broken English." (Id., same page) He continues that the same thing happened at the second meeting at the jail. (Id.) He contends he now knows from reviewing the record two interpreters had been appointed. He further argues that he explained to his attorney at this second meeting, a "man at the jail" could translate. The attorney explained to him this was unnecessary. Petitioner further argues the facts that are supportive of this claim is his discussion with his attorney regarding the letters. He states that he told his attorney during these pre-trial meeting they were not his, not his signature, and not his handwriting.

Petitioner has not shown any prejudice resulting from the alleged deficiency. Counsel moved for appointment of two interpreters, at least two months prior to trial. (Mem. in Supp. Mot. for Summ. J., Ex. 1 at 26, 27) The evidence before the jury and as discussed in Claim 2 (section C) was very strong. There is no evidence that petitioner's attorney had no understanding of him, and petitioner even states he only assumed she did not understand him, yet they did

10

speak, according to him about the letters, the man who could interpret, as well as, other issues. No prejudice has been shown and the claim fails.

(ii) and (iii) Claim ii and iii both raise arguments regarding the failure by trial counsel to object to the introduction of the letters read by Rios. This petitioner argues prejudice him because there was no proof petitioner wrote the letters.

At trial, Rios testified the letters were written by petitioner. (Ex. 3 at 4). Questions regarding the authorship of the letters would have gone to the weight of the evidence and Rios' credibility. Other evidence, excepting petitioner's allegations, indicated petitioner wrote the letters. Rios testified he saw petitioner hand the letters to the jail "hall man" or "cleanup man," who then brought them to Rios. (Id. (citing T vol. I pp. 85-86)) Rios also testified petitioner told him he would write him a letter. (Ex. 13 at 73) Given Rios's testimony and other evidence such as Rios' wife's deposit into petitioner's trust fund account, petitioner cannot prove ineffective assistance of counsel for counsel's failure to object to the admission of the letters. Furthermore, Rios was properly crossed and his credibility was placed into issue. Marcias has failed to met the requirements of Strickland and the claim fails.

(iv) Petitioner's final ineffective assistance of counsel claim asserts counsel failed to ask the trial court to apply the correct standard for the motion for mistrial and motion to strike. Having found no trial error in the same issue above in section B., no ineffective assistance of counsel can be shown therefrom and the claim is denied.

E. Unauthorized term of imprisonment

Petitioner's assertion that he was sentenced to an unauthorized term of imprisonment. This claim is not cognizable on federal habeas review, as it involves an issue of state sentencing law. See Estelle, 502 U.S. at 67-68. Petitioner presented the substance of this claim in both his

11

first and second MAR which the court summarily denied. (Mem. in Supp. of Mot. for Summ. J., Ex. 5; Ex. 8 at 24) The state-court adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Estelle. See § 2254(d)(1). Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. See § 2254(d)(2).

## Certificate of Appealability

Summary judgment concludes the matter. Therefore, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") Thus, the court reviews whether petitioner is entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. The certificate of appealability is denied.

## Conclusion

Accordingly, respondent's Motion for Summary Judgment is ALLOWED (D.E. # 13) and the certificate of appealability is DENIED. Therefore, the Clerk is DIRECTED to close the case.

SO ORDERED, this 23 day of August 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE